# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **ARTISHA HOUSTON**, on behalf of herself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**BBQVC FOOD GROUP LLC**,<br><br>    Defendant. | Case No. 2:22-cv-02780<br><br>Chief Judge Sheryl H. Lipman<br><br>**<u>JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT</u>** |

Representative Plaintiff Artisha Houston and Defendant BBQVC Food Group LLC (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arm's length, good faith negotiations, including mediation before a third-party neutral. The following documents are submitted for the Court's approval:

    **Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement"), along with its Exhibit A (Claim Form), Exhibit B (list of the Eligible Settlement Participants), and Exhibit C (Notice of Settlement); and,

    **Exhibit 2**: Declaration of Robi J. Baishnab.

A Proposed Order approving settlement is being emailed to Chambers.

1

**MEMORANDUM IN SUPPORT**

**I.  INTRODUCTION**

The Parties ask the Court to approve the attached FLSA Settlement, including the content of the Notice of Settlement, and the procedure of disseminating Notice and for allowing individuals to join the settlement as outlined in the Agreement. Settlement was reached during arm's length, good faith negotiations by experienced wage and hour attorneys, and only after a full day of mediation before a third-party neutral. (ECF Nos. 23, 24; Baishnab Decl. at ¶13). If approved, settlement will provide timely and substantial payments to those who participate, and this case will be dismissed with prejudice.

**A.  Factual and Procedural Background.**

On November 10, 2022, Representative Plaintiff filed this lawsuit ("the Action"). In the Action, Representative Plaintiff asserted claims against Defendant, on behalf of herself and others similarly situated, under the Fair Labor Standards Act ("FLSA"). Specifically, Representative Plaintiff alleged that Defendant failed to pay its tipped servers all minimum wages lawfully due. (ECF No. 1).

On January 9, 2023, Defendant filed its Answer in which it denied all claims asserted in the Action. (ECF No. 17).

To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage good faith, arm's length settlement discussions, including mediating before third-party neutral, Allen Blair, on February 2, 2023, which resulted in settlement. (ECF Nos. 23, 24). The terms of the settlement are embodied in the attached Agreement.

**B.  Summary of the Settlement.**

Settlement includes the approximate 83 Eligible Settlement Participants identified in Exhibit B of the Agreement, who consist of current and former servers employed at Defendant's

Corky's BBQ restaurants who were paid at or below the tipped minimum wage at any time during the Release Period of November 10, 2019, through February 2, 2023. (Agreement at ¶¶14, 22).

The Global Settlement Fund is **$75,000.00**. This amount includes (1) all Individual Settlement Payments; (2) Service Award for Representative Plaintiff; (3) the costs of settlement administration; and (4) Plaintiffs' Counsel's Attorneys' Fees and Costs. This amount does not include Defendant's share of the applicable employer tax withholdings or the cost of mediation, which Defendant will pay outside the Global Settlement Fund. (*Id*. at ¶15).

For purposes of Settlement, the Parties agree that Representative Plaintiff and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b) of the FLSA and agree to conditional certification of the collective of Eligible Settlement Participants. (*Id*. at ¶26). A Notice of Settlement will be sent to the Eligible Settlement Participants, along with a Claim Form to join the settlement. (*Id*. at ¶¶8, 18, 41-42; Exs. A and C). Those who join the settlement will become Claimants and receive settlement payments, as outlined in the Agreement. (Agreement at ¶¶7-8).

In preparation for mediation, Defendant produced some time and pay data for the collective. Plaintiffs' Counsel engaged the services of a PhD analyst to construct a damages model using information produced by Defendant, which included some extrapolations and estimates for missing data. The damages model was shared with the mediator and Defendant's Counsel at mediation. The Global Settlement Fund reflects approximately 39.46 percentage (%) of weekly work time spent engaging in unrelated and/or tip-supporting work, plus 100% liquidated damages. The average payment is estimated to exceed approximately $550.00. (Baishnab Decl. at ¶14).

Also, and as further detailed below, in preparation for mediation, Plaintiffs' Counsel spent a significant amount of time doing an expected value calculation, using a decision tree software called TreeAge Pro©. In this calculation, Plaintiffs' Counsel analyzed each potential risk of loss

3

(*i.e.*, collective certification, summary judgment, trial, good-faith, willfulness, jury award) and assigned a probability value to each potential risk. The decision tree software compounded each of these probability values and applied those values to the calculated estimated damages. This exercise allowed Plaintiffs' Counsel to fully appreciate the entire risk picture and economic value of the case on a collective basis, rather than relying only on experience. Here, the Global Settlement Fund exceeds the calculated expected value. (*Id.* at ¶17, 20).[1]

After deducting for Service Award, and for fees and costs, the remaining amount will be distributed to Claimants according to his or her *pro rata* share of the Net Settlement Fund based on the time worked at the tipped minimum wage rate of $2.13 per hour during the Release Period and as calculated by the Settlement Administrator.[2] Individuals with zero damages will not participate in settlement, will not be sent Notice, and release no claims. (Agreement at ¶¶8, 14-15, 18, 20).

Settlement provides for a **$2,500** Service Award to Representative Plaintiff in recognition of, and in consideration for, her substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Eligible Settlement Members. (*Id.* at ¶¶24, 29; Baishnab Decl. at ¶24). Settlement also provides for the payment of attorney's fees of one-third (1/3), or **$25,000.00**. (*Id.* at ¶28).

## II.   The Court should grant final FLSA approval.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A.   The seven-factor standard is satisfied.

---

[1] The actual calculated expected value can be submitted to the Court for in camera review, if the Court so directs.
[2] The "Release Period" refers to the period from November 10, 2019, through February 2, 2023, which is the date of mediation. (Agreement at ¶¶16, 22, 33).

4

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA "after scrutinizing the settlement for fairness." *Nutting v. Unilever Mfg. (U.S.)*, No. 2:14-cv-02239-JPM-tmp, 2014 U.S. Dist. LEXIS 91894, at *8 (W.D. Tenn. June 13, 2014); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

Settlement should be approved when (1) it was negotiated and agreed upon in an adversarial context, (2) both sides are represented by experienced employment attorneys, and (3) settlement reflects a fair and reasonable compromise over issues that are actually in dispute. *Lynn's Food Stores,* 679 F.2d at 1353-54.

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008).

Here, though Rule 23 scrutiny is not needed for an FLSA settlement, it nevertheless satisfies the seven factors used by the Sixth Circuit when evaluating class action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Robles v. Comtrak Logistics, Inc.*, No. 15-cv-2228, 2022 U.S. Dist. LEXIS 225283, at *16 (W.D. Tenn. Dec. 14, 2022) (*citing UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir.2007)).

1. **No indicia of fraud or collusion exists**.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Robles*, 2022 U.S. Dist. LEXIS 225283, at *18 (*citing Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).

Here, Defendant denies all liability and the Agreement was achieved only after arm's length and good faith negotiations between experienced counsel, including a full-day's mediation. (ECF No. 23; Baishnab at ¶13). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

2. **The complexity, expense, and likely duration of continued litigation favor approval**.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *Moore v. Med. Fin. Servs.*, No. 2:20-cv-02443-MSN-cgc, 2021 U.S. Dist. LEXIS 249719, at *7 (W.D. Tenn. Nov. 30, 2021); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (further citation omitted).

Collective claims included whether Defendant properly paid its tipped servers, including whether servers were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to, general cleaning of the restaurant (including bathrooms), preparing food for customers, refilling condiments, and clearing tables. (ECF No. 1 at ¶¶11-20). Claims also alleged that Defendant acted knowingly and willfully. (*Id*. at ¶21).

Accordingly, if this case had not settled, the Parties would be required to engage in extensive and costly litigation and discovery, such as written discovery and depositions, as well as

expert employment time studies. Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Baishnab at ¶22).

### 3. Investigation was sufficient to allow the parties to act intelligently.

The Parties engaged in substantial investigation and analysis before and while negotiating the Settlement. For example, Plaintiffs' Counsel has adopted a systematic approach to analyzing settlements that is grounded in empirical research and designed to achieve the maximum utility of a lawsuit. This approach is also specifically designed to avoid various decision-making biases that could result in the rejection of a favorable settlement or result in one that is disadvantageous to Plaintiffs' Counsel's clients. (*Id.* at ¶15).

To mitigate unwarranted biases in settlement decisions, Plaintiffs' Counsel performs an Expected Value ("EV") calculation for nearly all cases, which can be generalized as the anticipated value of a case at some point in the future after various uncertain events have occurred. (*Id.* at ¶16). Importantly, Judge Posner writing for a Seventh Circuit panel concluded that an EV is the proper method for determining the fairness of a class settlement: "A settlement is fair to the plaintiffs in a substantive sense…if it gives them the expected value of their claim if it went to trial…." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987)(explaining an EV calculation where a settlement of $7 million or more would be justified even where theoretical damages not accounting for compounded risk of loss could be up to $1 billion).

Plaintiffs' Counsel performed the EV calculation prior to mediation and before any significant settlement discussion. Essentially, the EV is calculated by summing the product of the probabilities of winning at each stage of the litigation and the expected outcome of success and

7

the product of the probabilities of losing at each stage and zero. The EV of a case is calculated and visualized using the decision tree software TreeAge Pro©. (Baishnab Decl. at ¶¶16-17).

A decision tree is created with various decision and chance (i.e., probability) nodes at each stage of the case where there is a win/loss potential. At the end of each "branch" in the tree is a payoff node, which is the sum of the probabilities times damages for the branch. The probabilities and values of the entire case are then summed, resulting in a final EV. (*Id.* at ¶¶17-18).

Both potential damages and win/loss probabilities were determined through a collaborative process involving attorneys who are familiar with the case and relevant case law. All participating attorneys also have significant experience with state and federal wage and hour collective and class action litigation generally. Alleged damages and probabilities were determined by a combination of averaging these attorneys' estimates and/or their consensus opinion. (*Id.* at ¶19).[3] Accordingly, this factor supports settlement approval.

### 4. The risks of litigation favor approval.

Settlement represents a compromise of disputed claims. Specifically, Representative Plaintiff alleged a company-wide policy and practice of not paying Eligible Settlement Participants all minimum wages earned. On the other hand, Defendant disputes the asserted claims and raised a number of defenses. Though the matter settled, the Parties continue to disagree about the claims and defenses, including whether any wages are owed at all, and if so, how much, whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, whether liquidated damages are appropriate, and whether the claims alleged can proceed collectively. Additionally, there is the risk that Representative Plaintiff could lose or obtain a smaller monetary remedy. (*Id.* at ¶21).

---

[3] As noted above, the actual EV can be submitted for in camera review, if the Court so directs.

**5.     The opinion of Plaintiffs' Counsel favor approval**.

"[C]ounsels' opinion that the settlement is fair is entitled to deference and further weighs in favor of approval." *Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *19 (E.D. Tenn. Mar. 8, 2018); *see also*, *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs .... [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Wright*, 2018 U.S. Dist. LEXIS 140019, at *11 ("The recommendation of Plaintiffs' Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference.");

Here, Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and vigorously advocated in the best interests of the Representative Plaintiff and the other Eligible Settlement Participants. Additionally, Plaintiffs' Counsel conducted a thorough assessment of the claims and defenses, and with recovery exceeding the calculated EV, Plaintiffs' Counsel believes that the proposed settlement is fair, adequate, and reasonable. (Baishnab Decl. at ¶23). Further, the Parties expressly agree that the settlement is fair, adequate, and reasonable. (Agreement at ¶27). Accordingly, this factor favors approval of the settlement.

**6.     The reaction of absent class members**.

Unlike Rule 23, the FLSA requires that Eligible Settlement Participants affirmatively join the case to participate in settlement. *Abadeer v. Tyson Foods, Inc*., No. 3:09-0125, 2010 U.S. Dist. LEXIS 136978, at *14 (M.D. Tenn. Dec. 14, 2010). Here, Settlement provides clear, and easy to understand notice of the settlement and provides for 60-days by which Eligible Settlement Participants can join. All claim forms will be filed with the Court. (Agreement at ¶44).

Additionally, the Parties have agreed that the Court retain jurisdiction over performance of the settlement. (*Id.* at ¶¶7, 41-42, 68).

### 7. The public interest.

"Settlement is the preferred means of resolving litigation." *Baker v. ABC Phones of N.C.*, No. 19-cv-02378-SHM-tmp, 2020 U.S. Dist. LEXIS 240695, at *39 (W.D. Tenn. Dec. 22, 2020). (*citing Crawford*, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499, at *9. "[F]ull enforcement of the FLSA represents a separate important public interest in ensuring that employers comply with federal employment laws." *Baker*, 2020 U.S. Dist. LEXIS 240695, at *39 (further citation omitted).

Here, "the Settlement confers immediate benefits on the Settlement [Collective], avoids the risks and expense in further litigation, and conserves judicial resources." *Wright*, 2018 U.S. Dist. LEXIS 140019, at *13. Therefore, the Court should find that this factor supports approval of the settlement.

### B. The settlement distributions are fair, reasonable, and adequate.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *See e.g.*, *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (*citing Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999) (further citation omitted).

### 1. The individual payments are reasonable and adequate.

As mentioned above, as part of negotiations, Plaintiffs' Counsel retained a PhD analyst to construct a damages model using information produced by Defendant. The damages model was shared with the mediator and Defendant's Counsel at mediation. The Global Settlement Fund reflects approximately 39.46 percentage (%) of weekly work time spent engaging in unrelated

and/or tip-supporting work, plus 100% liquidated damages. The average payment exceeds approximately $550.00. The Global Settlement Fund also exceeds the calculated EV. (Baishnab Decl. at ¶¶14, 20). Accordingly, payments are reasonable and adequate.

### 2. Representative Plaintiff's Service Award is proper and reasonable.

The Agreement provides for a Service Award of **$2,500.00** to Representative Plaintiff, in addition to her individual settlement payment. (Agreement at ¶29). Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 25672, at *34 (W.D. Tenn. Feb. 13, 2020) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Robles*, 2022 U.S. Dist. LEXIS 225283, at *32.

Here, Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to prepare a complete and informative complaint, and to evaluate the strength of this case and reach a settlement of this matter. Representative Plaintiff took the risk of filing the action, actively participated during the litigation, including being available throughout the day of mediation. (Baishnab Decl. at ¶24). Defendant agrees the requested amount is reasonable and does not contest the same. (Agreement at ¶29).

### 3. The attorney fees to Plaintiffs' Counsel are proper and reasonable.

After the Court has confirmed that the terms of settlement are fair to the Plaintiffs, it may review the Agreement as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow

11

a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b).

The Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994) (further citation omitted).

The Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in the amount of $25,000, which is one-third (1/3) of the Global Settlement Fund. One-third "is a normal fee amount in a wage and hour case." *See e.g.*, *Fitzgerald*, 2020 U.S. Dist. LEXIS 117220, at *27-28 (*citing In re Southeastern Milk Antitrust Litig.*, No. 2:07-cv-208, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012) (collecting cases and noting that a 33.33 percent attorney's fee "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Manjunath A. Gokare, P.C. v. Fed. Express Corp.*, No. 2:11-cv-2131, 2013 U.S. Dist. LEXIS 203546, 2013 WL 12094887, at *4 (W.D. Tenn. Nov. 22, 2013) (collecting cases in which courts in this Circuit have approved attorney's fee awards in common fund cases ranging from 30% to 33% of the total fund)) (internal quotations omitted).

Courts acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *10 (S.D. Ohio Nov. 25, 2019), and *Fox v. Team Goliath, Inc.*, No. 5:19-cv-195-JMH, 2021 U.S. Dist. LEXIS 262958, at *17 (E.D. Ky. Dec. 29, 2021).

Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees and costs, and will not be paid for any time during effectuation of the settlement. (Baishnab Decl. at ¶25). Thus, Plaintiffs' "Counsel took the risk of an unsuccessful outcome and no fee of any kind." *Grayson v. Madison Cty.*, No. 1:19-cv-1136-STA-tmp, 2019 U.S. Dist. LEXIS 212615, at *4 (W.D. Tenn. Dec. 10, 2019). "This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019) (further citation omitted).

Defendant agrees this request is reasonable and does not oppose the award of fees. (Agreement at ¶28). Accordingly, an award of one-third (1/3) of the settlement fund is reasonable and still advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d at 930; and *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### 4. The Court should authorize reimbursement of costs.

Plaintiffs' Counsel should also be reimbursed their litigation costs, which are **$1,304.14**. (Agreement at ¶28; Baishnab Decl. at ¶26). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20; *see also*, *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-02086, 2019 U.S. Dist. LEXIS 242062, at *12 (M.D. Tenn. Oct. 22, 2019). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20.

Expenses include filing fee, service, postage, certificates of good standing, and analysis of the data production and creation of the damages model. (Baishnab Decl. at ¶25) Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel. Defendant agrees this request is reasonable and does not oppose the reimbursement of costs. Accordingly, the Court should approve reimbursement of costs.

### III.  **CONCLUSION.**

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service award; and (4) retain jurisdiction to enforce the settlement, if necessary.

Respectfully submitted,

*/s/ Hans A. Nilges*
Hans A. Nilges (OH Bar 0076017)
**NILGES DRAHER LLC**
7034 Braucher, N.W., Suite B
North Canton, OH 44720
Telephone: (330) 470-4428
Facsimile: (330) 754-1430
Email:  hans@ohlaborlaw.com

Robi J. Baishnab (OH Bar 0086195)
**NILGES DRAHER LLC**
1360 E. 9th St., Ste. 808
Cleveland, OH 44114
Telephone: (216) 230-2955
Facsimile: (330) 754-1430
Email:  rbaishnab@ohlaborlaw.com

*/s/J. Mark Griffee (with permission)*
J. Mark Griffee (#7220)
Stan Medlin (#040219)
**BLACK MCLAREN JONES RYLAND & GRIFFEE, P.C.**
530 Oak Court Drive, Suite 360
Memphis, TN 38117
(901) 762-0535 – Telephone
(901) 762-0527 – Fax
mgriffee@blackmclaw.com
smedlin@blackmclaw.com

*Counsel for Defendant*

14

Robert C. Bigelow #022022
**BIGELOW LEGAL PLLC**
4235 Hillsboro Pike, Ste. 301
Nashville, TN 37215
rbigelow@bigelowlegal.com
(615) 829-8986

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing was filed for service via the Court's CM/ECF system on this March 8, 2023. Parties may access this filing through the Court's system.

                                              */s/ Hans A. Nilges*
                                              Hans A. Nilges

                                              *Counsel for Plaintiffs*