# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ARTISHA HOUSTON, on behalf of herself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 2:22-cv-02780-SHL-tmp |
| BBQVC FOOD GROUP LLC ) ) | |
| Defendant. ) ) | |

## ORDER GRANTING PARTIES' JOINT MOTION
## FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

Plaintiff Artisha Houston, on behalf of herself and all others similarly situated, filed a Complaint against Defendant BBQVC Food Group LLC ("BBQVC"), on November 10, 2022, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (ECF No. 1.)  Having arrived at a negotiated settlement agreement following a successful mediation, the Parties jointly seek approval of their proposed Settlement Agreement. (ECF Nos. 23 & 25.)  For the following reasons, the Court **GRANTS** the Motion.

## BACKGROUND

The Complaint alleges that BBQVC failed to pay Houston and the Putative Collective Members the minimum hourly wages to which they are entitled under 29 U.S.C. § 206. (ECF No. 1 at PageID 5.)  Houston alleges that BBQVC pays her and other servers as little as $2.13 per hour, which she avers is below minimum wage. (Id. at PageID 3.)  Houston maintains that BBQVC is attempting to take advantage of a tip credit which allows employers to count a portion of the amount servers receive as tips towards the minimum wage. (Id.)  However, Houston argues that BBQVC's policy and practice of requiring servers to perform non-tip

producing "side work" both related and unrelated to their tipped occupation while still paying them tipped minimum wage rates violates the FLSA. (Id. at PageID 3-4.)

On November 10, 2022, Houston filed a Notice containing signed Consent to Join Forms for an additional 12 opt-in plaintiffs. (See ECF Nos. 8 & 8-1.) The Parties filed their Joint Motion for Approval of Collective Action Settlement on March 8, 2023, which includes a proposed settlement that contains a Global Settlement Fund that, the Parties assert, "reflects approximately 39.46 percentage (%) of weekly work time spent engaging in unrelated and/or tip-supporting work, plus 100% liquidated damages." (ECF No. 25 at PageID 72.) "The average payment is estimated to exceed approximately $550.00." (Id.) The Global Settlement Fund contains a total of $75,000, of which one-third, or $25,000, is to be paid to Plaintiffs' counsel as attorneys' fees, and another $2,500 is to be awarded to named Plaintiff Houston as a service award. (Id. at PageID 72-73.)

The Parties have also agreed to a list of "Eligible Settlement Participants" that contains 81 names, including the named Plaintiff Houston and the already opted-in plaintiffs. (See ECF No. 25-1 at PageID 108-10.) The Parties have agreed that these employees, sourced from data provided by BBQVC prior to mediation, are either "current [or] former servers employed at Defendant's Corky's BBQ restaurants who were paid at or below the tipped minimum wage at any time during the Release Period," (id. at PageID 88), and that they are "similarly situated" as required by the FLSA, (id. at PageID 72). The proposed settlement allows 60 days from the mailing date of the notice for any employee on the list who has not yet opted-in to file a Claim

Form, (ECF No. 25-1 at PageID 96), each of which will be provided to the Court, (id. at PageID 97).[1]

## LEGAL STANDARD

The FLSA provides, in pertinent part, that an employer who engages in certain prohibited practices, like failing to pay overtime, shall be liable to a covered employee for back wages and liquidated damages. See 29 U.S.C. § 216(b). Once a covered employee files an FLSA claim pursuant to this provision, the only two ways that the claim may be resolved through an agreement of the parties are if (1) the Secretary of Labor supervises the payment of back wages or (2) the employer and employee present the proposed settlement to the district court for approval. Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor, 679 F.2.d 1350, 1352-53 (11th Cir. 1982). The Parties have taken the second route, presenting a proposed Settlement Agreement to this Court for approval.[2]

---

[1] On May 19, 2023, the Sixth Circuit overturned the "conditional certification" process previously utilized by district courts in this Circuit when reviewing proposed FLSA settlements. See Clark v. A&L Homecare and Training Center, LLC, 68 F.4th 1003 (6th Cir. 2023). Because the Parties have agreed that these "Eligible Settlement Participants" are similarly situated for the purposes of the FLSA, the Court finds that this intervening change in case law does not affect the proposed settlement, despite its now-outdated characterizations of the FLSA settlement review process.

[2] Part of the Parties' proposed settlement involves providing notice to the "Eligible Settlement Participants" who may then opt-in to the settlement, even after the Court's approval. However, this opt-in process typically must occur before a settlement may be approved. See, e.g., Perez v. Avatar Props., Inc., No. 6:07-cv-792-Orl-28DAB, 2008 WL 4853642 (M.D. Fla. Nov. 6, 2008); O'Bryant v. ABC Phones of N.C., Inc., No. 2:19-cv-02378, 2020 WL 4493157 (W.D. Tenn. Aug. 4, 2020). Despite this potential wrinkle, the proposed settlement here is only binding on an "Eligible Settlement Participant" when he or she opts-in, and otherwise does not foreclose potentially eligible employees from bringing their own FLSA suits if they wish to do so or are unhappy with the current proposed settlement. Therefore, the proposed settlement sufficiently protects all of the employees' interests. Moreover, the stipulated list of potential opt-in plaintiffs obviates this concern.

A district court must scrutinize a proposed FLSA settlement for fairness, and determine whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, 679 F.2d at 1355; Nutting v. Unilever Mfg. (U.S.) Inc., No. 2:14-cv-02239, 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014). In this analysis, the Court examines three factors: (1) whether the settlement was achieved in an adversarial context, (2) whether the plaintiffs were protected by attorneys who can protect their rights and (3) whether the settlement reflects a fair and reasonable compromise of the issues in dispute. Lynn's Food Stores, 679 F.2d at 1354. As to the fairness and reasonableness of the settlement, the Court examines additional factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

Nutting, 2014 WL 2959481, at *3 (quoting Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)).

## ANALYSIS

### I. Overall Settlement

Based on a review of the Parties' submissions, the Court finds that the proposed settlement is a fair and reasonable resolution of a bona fide FLSA dispute. On the first and second elements, Plaintiffs were represented by qualified counsel who filed the Complaint, to which BBQVC responded, fully denying their claims. (ECF No. 17.) Moreover, BBQVC continues to deny Plaintiffs' claims. (See ECF No. 25-1 at PageID 90.)

As to the third element, the Court finds the Settlement fair and reasonable. Plaintiffs employed a "PhD analyst to construct a damages model using information produced by [BBQVC]." (ECF No. 25 at PageID 79.) According to this model, the Global Settlement Fund

reflects "approximately 39.46 percent[] of weekly work time spent engaging in unrelated and/or tip-supporting work, plus 100% liquidated damages," and "[t]he average payment exceeds approximately $550.00." (Id. at PageID 79-80.) The Court finds this data-driven approach, based on information produced during discovery, reasonable in reaching the proposed settlement amount.

As for the Nutting factors, the Court finds no evidence of fraud or collusion and the settlement was reached following an arms-length mediation. See Nutting, 2014 WL 2959481, at *3. The Court similarly agrees that FLSA litigation, particularly as here where the number of opt-in plaintiffs becomes substantial, renders the case complex, which favors settlement to avoid costly litigation expenses. Additionally, the Parties completed some measure of discovery prior to their mediation and Plaintiffs used this information in determining whether a settlement would be appropriate. (See ECF No. 25 at PageID 76.) The Court also agrees with the Parties that proceeding to litigation presents significant risk as the Parties continue to dispute the validity of Plaintiffs' claims and underlying legal disputes involving statutes of limitations cloud recovery for certain plaintiffs. (See id. at PageID 77.) Finally, Plaintiffs' counsel indicates their support for the proposed settlement by filing this Motion.

## II.     Named Plaintiff Service Award

The Settlement includes a "named plaintiff service award" for Plaintiff Artisha Houston in the amount of $2,500. (Id. at PageID 80.) "Such awards are not uncommon and courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Ross v. Jack Rabbit Servs., LLC, No. 3:14-cv-44-DJH, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016) (quoting Dillworth v. Case Farms Processing, Inc., No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D.

5

Ohio, Mar. 8, 2010) (internal quotation marks omitted)). While the Sixth Circuit has not articulated specific factors itself, the court has noted a "sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." Shane Group, Inc. v. Blue Cross Blue Shield of Michigan, 825 F.3d 299, 311 (6th Cir. 2016) (quoting Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003)). District courts in this circuit have thus looked to several factors when determining whether to approve service incentive awards, including:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

Ware, 2020 WL 2441415, at *17 (quoting Ross, 2016 WL 7320890, at *5).

Here, Plaintiff Artisha Houston undertook the initial action to file the collective action against Defendant. Moreover, it appears that the opt-in Plaintiffs will receive largely what they claim to be owed in back pay and liquidated damages, a substantial benefit. Plaintiffs' counsel also describes Houston's level of involvement. Houston assisted Plaintiffs' counsel by "contribut[ing] significant time, effort and detailed factual information," as well as "actively participat[ing] during the litigation, including being available throughout the day of mediation." (Id.) While Plaintiffs' counsel took this case on a contingency basis, which reduced Houston's financial exposure to a potential negative verdict, the Court finds that the other two factors here weigh in favor of approving the service award.

### III.  Attorneys' Fees and Costs

The Settlement awards Plaintiffs' counsel a total payment of $25,000 in attorneys' fees, or one-third of the Global Settlement amount. "An award of attorney fees to a prevailing

6

plaintiff under § 16(b) of the FLSA is mandatory but the amount of the award is within the discretion of the judge." Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir. 1994) (citation omitted). A reviewing court must assess plaintiffs' attorney's fees, "even when the fee is negotiated as part of a settlement rather than judicially determined." Thompson v. United Stone, LLC, No. 1:14-CV-224, 2015 WL 867988, at *2 (E.D. Tenn. Mar. 2, 2015) (quoting Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013)). Six factors govern the reasonableness of class action fees:

> (1) the value of the benefit rendered to the plaintiff class . . . ; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996) (citation omitted). The reviewing court should not place significant weight on the balance between the amount of attorney's fees in relation to that recovered by plaintiffs as significant fees may be justified even if plaintiffs only recover a nominal amount. Fegley, 19 F.3d at 1135; see also, Thompson, 2015 WL 867988, at *2 ("the possibility of attorney's fees that eclipses any overtime pay award should add to the incentive for an employer to make a quick and just resolution of even the most minor overtime claims").

      Here, the Court finds the attorney's fees awarded in the Settlement reasonable under most of the Bowling factors. Each of the following factors weigh in favor of a finding of reasonableness: (1) as described, the benefit to Plaintiffs is substantial as the class is recovering much of their damages amount plus 100 percent of their claimed liquidated damages; (2) Plaintiffs' counsel took this case on a contingency basis, representing significant risk of nonpayment; (3) society has a significant stake in rewarding attorneys who assist in enforcing the

7

FLSA's employment regulations, see Does 1-2 v. Déjà vu Servs., Inc., 925 F.3d 886, 899 (6th Cir. 2019); (4) as mentioned, this suit constitutes a complex piece of litigation, involving dozens of members of the collective action; and (5) both sides were represented by professional counsel and Plaintiffs' counsel is experienced in litigating single-plaintiff and collective action labor lawsuits. Therefore, the Court finds the amount of attorney's fees awarded in the Settlement reasonable. The Court similarly approves Plaintiffs' counsel's reimbursement of their litigation costs in the amount of $1,304.14.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Parties' Joint Motion for Approval of FLSA Collective Action Settlement. Plaintiffs' claims against BBQVC are **DISMISSED WITH PREJUDICE**. Finally, as requested by the Parties, (ECF No. 25 at PageID 83), the Court shall retain jurisdiction to enforce the settlement, if necessary.

**IT IS SO ORDERED,** this 31st day of July, 2023.

s/ Sheryl H. Lipman<br>
SHERYL H. LIPMAN<br>
CHIEF UNITED STATES DISTRICT JUDGE